```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| LIBERTY MUTUAL INS. CO., et al. | )<br>) Civil Action No. 5:06-417-JMH |
| Plaintiffs, | ) |
| v. | ) |
| THE WAGNER-SMITH CO., et al. | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |

```
               **    **    **    **    **
```

This matter is before the Court on the motion of Defendant The Wagner-Smith Company ("Wagner-Smith") to dismiss the plaintiffs' complaint for declaratory judgment [Record No. 19]. This matter is now ripe for review.

**PROCEDURAL AND FACTUAL BACKGROUND**

In June 2003, Plaintiff Sedgman, LLC ("Sedgman") entered into a Construction Contract ("the Contract") with Defendant East Kentucky Power Cooperative, Inc. ("EKP") for the construction of a Material Handling Upgrade at the Spurlock Power Station ("the Project"). Pursuant to the terms of the Contract, Plaintiff Liberty Mutual Insurance Company ("Liberty") issued a Contractor's Bond, naming Sedgman as principal and in favor of EKP as Owner/Obligee. Wagner-Smith was a sub-sub-contractor on the project. It had contracted to do certain electrical construction work with Plaintiff Robertson P&E, Inc. ("Robertson"), which had in turn contracted with Sedgman to perform certain electrical engineering work on the Project.

During the course of Wagner-Smith's performance, Sedgman allegedly caused delays which resulted in additional costs to Wagner-Smith. As a result, Wagner-Smith submitted a proof of claim to Liberty on October 6, 2006.

On November 22, 2006, counsel for Wagner-Smith advised Liberty by letter that, if its claim was not paid by December 15, 2006, Wagner-Smith would file suit. Rather than respond, Liberty filed this action for declaratory judgment on December 14, 2006.

Unaware of the recently-filed action, Wagner-Smith sent another letter on December 18, 2006, with draft complaint attached, advising Liberty that it would file suit in the Circuit Court of Mason County, Kentucky if it had not received a meaningful response regarding the proof of claim by December 22, 2006.

## ANALYSIS

Whether a district court exercises jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is within its discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). In deciding whether to exercise jurisdiction, a district court should consider the following five factors:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

2

>    (5) whether there is an alternative remedy that is better
>    or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

*1. Whether the judgment would settle the controversy.*

This factor does not weigh heavily in favor of or against allowing this action. Counterclaims will likely be necessary in order to dispose of every issue. Though the parties did not focus on this factor, this situation is similar to the one before the Sixth Circuit in *Amsouth Bank v. Dale*:

> The crux of the argument between the parties is whether or not the ability of the [defendants] to file counterclaims that will dispose of all issues in the declaratory-judgment actions can be considered in determining whether the judgments would settle the controversy. Each side argues that the rule the other proposes will swallow this factor, as counterclaims will so often be possible or even compulsory that all declaratory judgments will either be able to or not be able to settle the controversy. We conclude only that in this case, this first factor does not weigh heavily in favor of or against allowing these actions.

*Amsouth Bank v. Dale*, 386 F.3d 763, 785-86 (6th Cir. 2004).

*2. Whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue.*

This factor weighs heavily against the exercise of jurisdiction. The Sixth Circuit has held that,

> [w]here a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified.

*Id.* at 787. "The 'useful purpose' served by the declaratory

3

judgment action is the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing." *Id.* at 786. Therefore, declaratory judgments do not serve a useful purpose in "coercive tort action[s]," *id.*, or in contract claims where "the historical incidents giving rise to liability are finished," *id.* at 788.

In some instances, "continuous accusations without adjudication of rights can justify entertaining a declaratory judgment suit." *Id.* at 787 (citing *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 908 (N.D. Ill. 1998)). However, "'the threat of suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment.'" *Amsouth*, 386 F.3d at 786 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002)).

In this case, the declaratory judgment action does not serve a useful purpose. This is a contract claim where the alleged events giving rise to liability have already been completed. There is also no suggestion from the record that Wagner-Smith has been holding the threat of suit over Liberty Mutual's head. If it were to wait for Wagner-Smith to file its suit, Liberty Mutual would not "'act at [its] peril.'" *Amsouth*, 386 F.3d at 786.

*3. Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata."*

This factor also weighs against exercising jurisdiction.

4

"Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Id.* at 788. Although this action would have likely ended up in this Court even if the natural plaintiffs had filed in state court, the timing of the complaint is highly suspicious. In its November 22 letter, Wagner-Smith indicated that it would file suit if it had not been paid by December 15. The plaintiffs filed this suit on December 14. "[T]he Act 'is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse.'" *Id.* at 788 (quoting *Hyatt Int'l*, 302 F.3d at 712).

*4. Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction.*

This factor weighs in favor of exercising jurisdiction. Even if a parallel state court proceeding existed, it would have been removable to federal court. Since Wagner-Smith intended to file its complaint in the Mason County Circuit Court, this action would have probably been removed to the United States District Court for the Eastern District of Kentucky.

*5. Whether there is an alternative remedy that is better or more effective.*

This factor does not weigh heavily in favor of or against the declaratory judgment remedy. *See Amsouth*, 386 F.3d at 791 ("Beyond

5

recognizing that an alternative remedy exists [i.e. a coercive action], we are unsure that this factor weighs heavily in favor of or against entertaining these declaratory actions.").

While not as clear-cut as the facts before the Sixth Circuit in *Amsouth v. Dale*, the circumstances of this case weigh against exercise of the declaratory judgment remedy. In particular, the remedy clearly does not serve a useful purpose in this case since the plaintiffs are not at risk of ongoing harm. This Court is also persuaded by the suspicious timing of the complaint, which supports an inference of some form of procedural gamesmanship even if the case filed by Wagner-Smith would have ultimately ended up in this Court.

Accordingly, **IT IS ORDERED**:

(1) That Defendant's motion to dismiss this declaratory judgment action [Record No. 19] be, and the same hereby is, **GRANTED**.

(2) That the plaintiffs' complaint for declaratory judgment be, and the same hereby is, **DISMISSED WITHOUT PREJUDICE**.

This the 6th day of March, 2007.



Signed By:
*Joseph M. Hood*
**United States District Judge**